UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**JIANGSU GTIG ESEN CO., LTD.,**

         **Plaintiff,**

vs.                   5:20-CV-222
                       (MAD/ATB)

**AMERICAN FASHION NETWORK, LLC and
JES APPAREL, LLC,**

         **Defendants.**
_____

APPEARANCES:            OF COUNSEL:

**BOND SCHOENECK & KING, PLLC**   **BRIAN J. BUTLER, ESQ.**
One Lincoln Center           **TAYLOR E. REYNOLDS, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Plaintiff commenced this action on February 27, 2020, asserting breach of contract, an action for price under UCC § 2-709, account stated, and unjust enrichment. *See* Dkt. No. 1. Upon expiration of Defendants' time to answer the complaint, Plaintiff requested entry of default, which the Clerk of the Court entered on April 13, 2020. *See* Dkt. No. 10. On May 9, 2020, Plaintiff moved for default judgment, which is currently before the Court. *See* Dkt. No. 12.

### II. BACKGROUND

  Plaintiff Jiangsu Gtig Esen Co., Ltd. is a corporation formed under the laws of the People's Republic of China with its principal place of business at 17A, Guotai Time Plaza, Remning Road, Zhanhijgang City, Jiangsu, China 215600. *See* Dkt. No. 1 at ¶ 2. Defendant American Fashion

Network, LLC (hereinafter "AFN") is a New York limited liability company, organized under the laws of the State of New York, with its principal place of business at 5852 Heritage Landing Drive, East Syracuse, New York 13057. *See id.* at ¶ 3. Defendant JES Apparel, LLC (hereinafter "JES Apparel") is a Delaware limited liability company, with its principal place of business at 8104 Cazenovia Road, Manlius, New York 13104. *See id.* at ¶ 4. Since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. *See id.* at ¶ 5.

Plaintiff manufactures, ships, and delivers specialty garment products. *See id.* at ¶ 9. Defendants contracted with Plaintiff to manufacture, ship, and deliver a variety of garments for Defendants upon Defendants' request. *See id.* at ¶ 10. In exchange, Defendants agreed to pay Plaintiff for the garments ordered and provided. *See id.*

Defendants requested garments from Plaintiff through purchase orders that Defendants delivered to Plaintiff. *See* Dkt. No. 1 at ¶ 11. Upon receipt of the purchase orders, Plaintiff filled those purchase orders by manufacturing, shipping, and delivering the requested products to Defendants and/or third-party retailers on Defendants' behalf. *See id.* at ¶ 12. Plaintiff would then issue invoices to Defendants reflecting the amount to be paid for the products manufactured by Plaintiff and shipped to Defendants and/or the third-party retailers. *See id.* at ¶ 13. Between July 13, 2017 and April 16, 2018, Plaintiff and Defendants executed one hundred and sixty-seven (167) purchase orders (hereinafter the "Purchase Orders") for the manufacture and delivery of certain garments (hereinafter the "Product").[1] *See id.* at ¶ 14.

---

[1] The Court refers the parties to the complaint for a complete list of the Purchase Orders at issue. *See* Dkt. No. 1 at ¶ 14.

Pursuant to the Purchase Orders, Plaintiff manufactured, shipped, and delivered the Product ordered to Defendants and/or the third-party retailers. *See id.* at ¶ 15. Once shipped, Plaintiff received a Forwarder's Cargo Receipt (hereinafter "FCR") for each of the 167 Purchase Orders, certifying that the Product was received by the carrier chosen to deliver the Product to Defendants. *See id.* at ¶ 16. Defendants have not rejected or refused to accept any of the Product that Plaintiff manufactured, shipped, and delivered to or on behalf of Defendants. *See id.* at ¶ 17.

Plaintiff delivered one hundred and sixty-four (164) invoices (hereinafter the "Invoices") to Defendants for the Product that Plaintiff ordered between July 13, 2017 and April 16, 2018 and that Plaintiff manufactured, shipped, and delivered for and on behalf of Defendants. *See id.* at ¶ 18. The Invoices were issued to Defendant AFN and were delivered electronically to employees, agents, and/or representatives of Defendants. *See id.* at ¶ 19.

Under the terms of the Invoices, Defendants were required to remit payment to Plaintiff within ninety (90) days of the "Factory Date" listed on each of the Invoices. *See id.* at ¶ 20. To date, Defendants have failed to remit full payment of the Invoices to Plaintiff. *See id.* at ¶ 21. As a result, Defendants owe Plaintiff $4,257,827.70. *See id.* at ¶ 22.

### III. DISCUSSION

A.  **Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after

3

the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

Further procedural requisites are imposed by Local Rule 55.2, requiring a party to submit the entry of default, a proposed default judgment, a copy of their pleading, and an affidavit setting forth the following:

> 1. The party against whom it seeks judgment is not an infant or an incompetent person;
>
> 2. The party against who it seeks judgment is not in the military service, or if unable to set forth this fact, the affidavit shall state that the party against whom the moving party seeks judgment by default is in the military service or that the party seeking a default judgment is not able to determine whether or not the party against whom it seeks judgment by default is in the military service;
>
> 3. The party has defaulted in appearance in the action;
>
> 4. Service was properly effected under Fed. R. Civ. P. 4;
>
> 5. The amount shown in the statement is justly due and owing and that no part has been paid except as set forth in the statement this Rule requires; and
>
> 6. The disbursements sought to be taxed have been made in the action or will necessarily be made or incurred.

N.D.N.Y. Local Rule 55.2.

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). Although the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to

"[afford] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party.  *Id.*  Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default.  *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

    The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing defendants on notice of the relief sought, *see* Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *Enron Oil Corp.*, 10 F.3d at 95-96; *cf. King v. STL Consulting, LLC*, No. 05 CV 2719, 2006 WL 3335115, *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved — the more money involved, the less justification for entering default judgment.  *See Hirsch v. Innovation Int'l, Inc.*, No. 91 CV 4130, 1992 WL 316143, *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant." *Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing their entitlement to recovery. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Upon entry of default, the defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. *See id.*; *see also Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09 CV 5558, 2013 WL 5329254, *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiff has met that burden, however, the Court draws all "reasonable inferences from the evidence offered" in the plaintiff's favor. *Id.* (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating each defendant's liability, the plaintiff must also establish his or her entitlement to damages to a "reasonable certainty." *Gunawan v. Sushi Sake Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Although "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), *aff'd*, 873 F.2d 38 (2d Cir. 1989).

In the present matter, Plaintiff has complied with the procedural requirements necessary for entry of default judgment in compliance with Rule 55(b) of the Federal Rules of Civil Procedure and Local Rule 55.2. Specifically, Plaintiff submitted the Clerk's entry of default, *see* Dkt. No. 12-4, a proposed default judgment, *see* Dkt. No. 12-7, and an affidavit setting forth all of the required information set forth above. *See* Dkt. No. 12-1. Further, on March 11, 2020, Plaintiff filed proof of service demonstrating that Defendants AFN and JES Apparel were

properly served with the summons and complaint by means of service through the Secretary of State, pursuant to Rule 4 of the Federal Rules of Civil Procedure and New York Limited Liability Law § 303.  *See* Dkt. Nos. 5 & 6.  Having found that Plaintiff has complied with the procedural requirements for default judgment, the Court will now consider the substance of Plaintiff's motion.

**B.     Breach of Contract**

"Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages."  *Swan Media Group, Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004); *Johnson v. Nextel Comm's Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).  "'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'"  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (quotation and other citation omitted).

In the present matter, the Court finds Plaintiff is entitled to default judgment in its favor as to its breach of contract claim.  Accepting the allegations in the complaint as true, Plaintiff has established Defendant it manufactured, shipped, and delivered to Defendants the Product requested pursuant to the Purchase Orders.  *See* Dkt. No. 1 at ¶¶ 24-25.  Plaintiff then issued Invoices to Defendants for the Product that was manufactured, shipped, and delivered, requiring Defendants to remit payment within ninety (90) days, which they failed to do.  *See id.* at ¶¶ 26-29.  As such, the complaint plausibly alleges that Defendants breached the contractual agreement memorialized in the Purchase Orders and Invoices.

**C.     Goods Sold and Delivered**

Under the doctrine of goods sold and delivered, a plaintiff must demonstrate that (1) he had a valid contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods. *See Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 571 (S.D.N.Y. 2013) (citing N.Y.U.C.C. § 2-709(1)(a)); *see also Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629, 2004 WL 830079, *2 (S.D.N.Y. Apr. 13, 2004) ("The essential elements of an action for goods sold and delivered are the purchase, sale and delivery of goods at an established price and nonpayment therefor") (internal citations omitted). A buyer accepts goods when that buyer "(1) has a reasonable opportunity to inspect goods and 'signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity;' (2) does not effectively reject the goods; or (3) 'does any act inconsistent with the seller's ownership.'" *Movado Grp., Inc. v. Caseiko Trading Co., Inc.*, 912 F. Supp. 2d 109, 114 (S.D.N.Y. 2012) (quoting N.Y.U.C.C. § 2-606(a)-(c)). "Goods that a buyer has in its possession necessarily are accepted or rejected by the time a reasonable opportunity for inspecting them passes." *Weil v. Murray*, 161 F. Supp. 2d 250, 256 (S.D.N.Y. 2001) (citing *Seabury Constr. v. Jeffrey Chain Corp.*, No. 98 Civ. 5941, 2000 WL 1170109, *2 (S.D.N.Y. Aug. 17, 2000)).

In the present matter, the well-pleaded facts demonstrate that Plaintiff had a valid contract with Defendants, that Defendants failed to pay the purchase price as set forth in the Purchase Orders and Invoices, and that Defendants failed to take any action that would signify that they did not accept the Products delivered by Plaintiff. Accordingly, the Court finds that Plaintiff is entitled to default judgment as to liability on its cause of action brought pursuant to Section 2-709 of the New York Uniform Commercial Code.

**D.     Damages**

In support of its application for damages, Plaintiff submitted the Declaration of Xing Zhangjuan, along with a statement of amounts due and, in compliance with Local Rule 55.2(a), interest owed, calculated through May 6, 2020, at the statutory rate of nine (9) percent. *See* Dkt. No. 12-1 at ¶¶ 17-19; Dkt. No. 12-5; Dkt. No. 12-6. The statement of amount due credits Defendants with payments made prior to and after the complaint was filed for the amounts and dates of payments. After crediting Defendants for the amounts they have already paid towards the Invoices, the evidence before the Court supports a finding that Defendants owed a principal amount of $4,257,827. *See* Dkt. No. 12-6 at 1. Interest for all past due payments through May 6, 2020 amounts to $722,572.41. *See id.*

Additionally, Plaintiff is entitled to $400.00 for the cost of the filing fee and $150.00 for service of process on Defendants. *See* Dkt. No. 12-6 at 1. Finally, Defendants are entitled to a credit of $1,512.58 for payment received on April 2, 2020, bringing the total amount to $4,979,437.53. *See id.*

Accordingly, the Court finds that Plaintiff is entitled to default judgment in the amount of $4,979,437.53. This amount reflects interest on the principal amount from the date the Invoice was due through May 6, 2020.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiff's motion for default judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor in the amount of **$4,979,437.53** and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 24, 2020
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge